

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

## NO. PD-0831-18

---

## MARC WAKEFIELD DUNHAM, Appellant

### v.

## THE STATE OF TEXAS

---

## ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE FOURTEENTH COURT OF APPEALS
## HARRIS COUNTY

---

RICHARDSON, J., delivered the opinion of the Court in which KELLER, P.J., HERVEY, NEWELL, KEEL, WALKER, SLAUGHTER, and MCCLURE, JJ., joined. YEARY, J., filed a dissenting opinion.

## O P I N I O N

Does the Deceptive Business Practices law, Texas Penal Code § 32.42(b), require jury unanimity on the same specific act of deception to convict? No. Jury unanimity is not required on the specific manner and means of the offense because the manner and means is not an "essential element" of the offense. Furthermore, we also find that the evidence was sufficient to support Appellant's conviction.

1

**Background**

Appellant, Mark Wakefield Dunham, was a door-to-door salesman for Capital Connect. On or about June 15, 2016, Appellant rang the doorbell of Eloise Moody, an 81-year-old lady recently widowed and diagnosed with cancer. When Moody answered, Appellant pointed at the "Central Security Group" alarm sign in Moody's front yard and said: "I'm here to update your security." Appellant also said, referring to the Central Security Group sign, "I'll put a light on it, make it visible from the street" which he explained would be helpful to "update the neighborhood." Appellant was not wearing a uniform or name tag and did not say what company he worked for. Moody, therefore, understood Appellant to be employed by her alarm company (Central) and that he was intending to place a light on the sign in her front yard.

Appellant then stepped into Moody's doorway prompting her to open the door further. As he did this, Appellant said: "Would you like me to pull off my shoes. I don't know what your panel looks like." Still believing that Appellant was employed by Central, Moody told him the panel was "in the back of the house through the laundry, through the kitchen." Moody testified that she would never have let Appellant enter her home if she had known he worked for a different company.

Appellant walked deep into the house, peeked at the panel in the laundry room and then asked, "Can we sit here and talk?" so he could use the kitchen tabletop to write on. With Moody sitting at the table, Appellant presented various new features to Moody and told her that the features and their installation would be free. According to Moody,

2

Appellant kept saying, "This is free. It won't cost you anything." Moody was still under the engineered impression that Appellant worked for her original alarm company. She would later find out that these "free" new features came with a contract that was far more expensive than her existing one.

Appellant then called Central to have Moody cancel her contract, and he told her that if they gave her any "flak" she should tell them that the Central hardware was "being taken out," and hand the phone to him and tell them that he was her son. Although Moody later told Appellant that she could not do anything without her daughter's approval, Appellant continued with the sale. According to Moody, during this call, a Capital Connect technician summoned by Appellant had already arrived and was in the process of removing the Central system and rewiring the house for Capital's hardware.

Appellant also telephoned Capital Connect and had Moody speak with a representative. A recording of the call was admitted into evidence. Moody said that she was currently paying Central. When the representative asked her if she was having a new alarm system installed because the prior company was going out of business, had been taken over, or was no longer able to perform monitoring services, Moody answered, "No, I'm just changing it up." The representative then asked if Moody understood that by accepting the offer, she would be changing alarm companies, and she responded, "That I will what" and "I'm not understanding you." The representative said that Capital Connect is a separate company from Central, and Moody said "Yes." Later during the call, Moody stated she was having difficulty hearing.

When Appellant presented her with the paperwork, she realized he didn't work for Central, but she signed anyway and entered into a five-year agreement with Capital with a higher monthly cost—roughly double her service fees through Central. She also initialed next to the following statement: "I understand that Capital Connect has not bought, taken over or is in any way partnered with my current alarm monitoring company." She testified that she did not realize how much the new system was going to cost. A few days later, Moody canceled the new contract with Capital.

Appellant was charged with deceptive business practices pursuant to Penal Code § 32.42(b). Specifically, the information alleged that Appellant intentionally, knowingly, and recklessly:

(1) represented that a commodity or service was of a particular style, grade, or model, when it was another, by giving the impression to Eloise Moody that an alarm system was a Central Security Group system when it was actually a Capital Connect system;

(2) represented the price of the service falsely or in a way tending to mislead by telling Moody that a new alarm installation would be free when it would actually require her to sign a new contract at additional cost; and/or

(3) made a materially false or misleading statement in connection with the purchase or sale of a service by telling Moody that a new alarm installation would be free when such installation actually would require her to sign a new contract at additional cost.[1]

He pleaded not guilty and was tried before a jury who found him guilty of the offense. The trial court sentenced Appellant to one year in the county jail, and the court of appeals affirmed.

---

[1] *See infra*, *8, *8 n. 18.

We granted review to determine whether the evidence was sufficient to support Appellant's conviction and whether the jury charge erroneously authorized a non-unanimous verdict. Based on our construction of Texas Penal Code § 32.42(b), and our review of the record, viewing the evidence in the light most favorable to the verdict, we agree with the court of appeals on both points: (1) there was sufficient evidence to support the conviction; and (2) jury unanimity was not required on the specific manner and means of the offense because it was not an "essential element" of the offense.

## I. Sufficiency of the Evidence

Appellant argues that the court of appeals erred in holding that the evidence is legally sufficient to sustain his conviction under the three predicate acts charged in the information pursuant to subsections 32.42(b)(7), (9), and (12).[2] Appellant argues that he never made an "affirmative misrepresentation," and that he eventually disclosed his true employment status by the time of the contract signing.[3] Thus, according to Appellant, the court of appeals was erroneous in limiting the temporal scope of the statutory term, "represent," to include anything less than the entirety of the transaction.[4] We agree with the court of appeals that under Section 32.42(b) representations can happen in the time

---

[2] Appellant's Br. at 9.

[3] *Id*. at 11–14.

[4] *Id*. at 14–17.

leading up to a contract signing.[5] We further agree with the court of appeals that the evidence here is legally sufficient to sustain Appellant's conviction.[6]

*Standard of Review for Sufficiency of the Evidence*

We conduct a two-step process to determine whether the court of appeals properly analyzed the sufficiency of the evidence. First, we must determine "the essential elements of the crime" for which the State must provide sufficient evidence to support a conviction.[7] To identify the "essential elements of the crime" we examine "the hypothetically correct jury charge for the case."[8] A hypothetically correct jury charge does four things: (1) accurately sets out the law, (2) is authorized by the indictment, (3) does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and (4) adequately describes the particular offense for which the defendant was tried."[9] This list is "not necessarily exhaustive."[10] The law as authorized by the indictment includes

---

[5] *Dunham v. State*, 554 S.W.3d 222, 229 (Tex. App.—Houston [14th Dist.] 2018).

[6] *Id.* at 230.

[7] *Clinton v. State*, 354 S.W.3d 795, 799 (Tex. Crim. App. 2011).

[8] *Id.*; *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

[9] *Ramos v. State*, 407 S.W.3d 265, 269 (Tex. Crim. App. 2013); *Malik*, 953 S.W.2d at 240.

[10] *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000).

"the statutory elements of the offense . . . as modified by the charging instrument."[11] We conduct a de novo review of statutory interpretation.[12]

Second, we perform a sufficiency review by examining all of the evidence in the record in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[13] "[The jury's] verdict must stand unless it is found to be irrational or unsupported."[14] "The jury is the sole judge of the credibility and weight to be attached to the testimony of witnesses. When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict, and we defer to that determination."[15] "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction."[16] "Direct evidence and circumstantial evidence are treated equally" and "circumstantial evidence alone can be sufficient to establish guilt."[17]

---

[11] *Curry*, 30 S.W.3d at 404.

[12] *Williams v. State*, 253 S.W.3d 673, 677 (Tex. Crim. App. 2008).

[13] *Geick v. State*, 349 S.W.3d 542, 545 (Tex. Crim. App. 2011).

[14] *Matson v. State*, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991).

[15] *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014).

[16] *Id.*

[17] *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

*Essential Elements of the Crime*

We begin with determining the essential elements of the offense. The State alleged by information the following:

> [I]n Harris County, Texas, MARC WAKEFIELD DUNHAM, hereafter styled the Defendant, heretofore on or about JUNE 15, 2016, did then and there unlawfully, in the course of business intentionally, knowingly and recklessly represent that a commodity or service is of a particular style, grade, or model if it was another, namely: by giving the impression to Eloise Moody, hereinafter the Complainant, that an alarm system was a Central Security Group alarm system when it was actually a Capital Connect alarm system, and/or intentionally, knowingly and recklessly represent the price of property or service falsely or in a way tending to mislead, namely by telling the Complainant that a new alarm system installation would be free when such installation actually would require her to sign a new contract at additional cost, and/or intentionally, knowingly, and recklessly make a materially false or misleading statement in connection with the purchase or sale of property or service, namely, by telling the Complainant that a new alarm system installation would be free when such installation actually would require her to sign a new contract at additional cost.[18]

---

[18] Texas Penal Code Section 32.42(b) provides, in relevant part:

A person commits an offense if in the course of business he intentionally, knowingly, recklessly, or with criminal negligence commits one or more of the following deceptive business practices:
* * *
    (7) representing that a commodity or service is of a particular style, grade, or model if it is another;
* * *
    (9) representing the price of property or service falsely or in a way tending to mislead;
* * *
    (12) making a materially false or misleading statement:
       * * *
       (B) otherwise in connection with the purchase or sale of property or service.

The definition of "business" includes "trade and commerce and advertising, selling, and buying service or property." TEX. PENAL CODE § 32.42(a)(2).

8

Under this information pursuant to Section 32.42(b), the State was obligated to prove the following:

1. Appellant
2. On or about June 15, 2016
3. Intentionally, knowingly, or recklessly
4. In the course of business
5. that Appellant committed <u>one or more of the following deceptive business practices</u>:
   a. [pursuant to 32.42(b)(7)] represent that a commodity or service is of a particular style, grade, or model if it was another, namely:
   by giving the impression to Eloise Moody, hereinafter the Complainant, that an alarm system was a Central Security Group alarm system when it was actually a Capital Connect alarm system, *or*
   b. [pursuant to 32.42(b)(9)] represent the price of property or service falsely or in a way tending to mislead, namely:
   by telling the Complainant that a new alarm system installation would be free when such installation actually would require her to sign a new contract at additional cost, *or*
   c. [pursuant to 32.42(b)(12)] make a materially false or misleading statement in connection with the purchase or sale of property or service, namely:
   by telling the Complainant that a new alarm system installation would be free when such installation actually would require her to sign a new contract at additional cost.

(emphasis added). Appellant does not contest identity, date, nor that the alleged conduct was in the course of business. On appeal, Appellant contests only the sufficiency of whether, at a minimum, he recklessly represented or carried out any of the three deceptive business practices alleged. Under the plain language of the statute, only "one or more of

the following deceptive business practices" was required to be proven.[19] Because the State offered sufficient evidence under the first allegation under Section 32.42(b)(7), we need not examine the latter two.

*Analysis of the Plain Meaning of the Statutory Term "Represent"*

The statute here provides that a person commits the offense of deceptive business practices if, in the course of business, he intentionally, knowingly, recklessly, or with criminal negligence represents that a commodity or service is of a particular style, grade, or model when it is of another.[20] Because the Penal Code does not define the word "represents" for the deceptive business practices offense, we must determine what that word means under the statute.

We construe a statute according to its plain meaning and consider extratextual factors if the statutory language is ambiguous or if the plain meaning would lead to an absurd result.[21] To determine the plain meaning, we apply the canons of construction, which include a list of presumptions regarding legislative intent.[22] It is presumed that the statute complies with the Texas and federal constitutions; the entire statute is intended to

---

[19] *Clinton v. State*, 354 S.W.3d 795, 800 (Tex. Crim. App. 2011).

[20] TEX. PENAL CODE § 32.42(b)(7).

[21] *Clinton*, 354 S.W.3d at 800; *Boykin v. State*, 818 S.W.2d 782, 785-86 (Tex. Crim. App. 1991).

[22] *Clinton*, 354 S.W.3d at 800 (citing *Rushing v. State*, 353 S.W.3d 863, 865 (Tex. Crim. App. 2011); TEX. GOV'T CODE § 311.021.

be effective; a just and reasonable result is intended; a result feasible of execution is intended; and public interest is favored over private interest.[23] When analyzing the sufficiency of the evidence, undefined statutory terms "are to be understood as ordinary usage allows, and jurors may thus freely read statutory language to have any meaning which is acceptable in common parlance."[24] If, however, the statutory terms have a technical meaning, we will construe them consistent with the technical meaning.[25]

When determining the fair, objective meaning of an undefined statutory term, our Court may consult standard dictionaries.[26] The verb "represent" has been defined several ways. For example, *Webster's Third New International Dictionary* includes as a definition of represent "to describe as having a specified character or quality."[27] *Black's Law Dictionary* defines "representation" as "a presentation of fact—either by words or by conduct—made to induce someone to act, esp. to enter into a contract; esp., the manifestation to another that a fact, including a state of mind, exists."[28] In its common usage, the word presumes that the action can occur before a completed transaction like a contract. Applying this definition to the word "represent" as used in the deceptive business

---

[23] TEX. GOV'T CODE § 311.021.

[24] *Clinton*, 354 S.W.3d at 800; *Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992).

[25] *See Medford v. State*, 13 S.W.3d 769, 771–72 (Tex. Crim. App. 2000).

[26] *Ramos v. State*, 303 S.W.3d 302, 306 (Tex. Crim. App. 2009).

[27] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1926 (1993).

[28] BLACK'S LAW DICTIONARY 1327 (8th ed. 2004).

practices statute, we agree with the court of appeals and conclude that the word includes, and the statute criminalizes, the defendant's conduct leading up to and during the completion of a business transaction.

The definition proposed by the court of appeals follows the pertinent canons of construction, and its conclusion that the relevant inquiry here focuses on Appellant's actions and representations during the course of business is sound.[29] As the court of appeals notes, "[t]he statute does not criminalize conduct of the defendant only when the defendant is successful in perpetrating a fraud. Rather, the statute criminalizes the act of "representing"—an act that can occur before a completed transaction."[30] Presuming the Legislature intended for the entire statute to be effective and for a just and reasonable result, a plain reading of the statute suggests that consummation of the transaction is not required.[31]

*Sufficiency under Texas Penal Code Section 32.42(b)(7)*

We find that a rational juror could have concluded beyond a reasonable doubt that Appellant completed a deceptive business practice while in the course of business. Appellant argues that he did not make any express statements that were false, and that, at worst, he only omitted material information. However, the jury could have rationally

---

[29] *See* TEX. GOV'T CODE § 311.021.

[30] *Dunham*, 554 S.W.3d at 229.

[31] *See* TEX. GOV'T CODE § 311.021.

concluded from the evidence that Appellant's words and actions in their totality were either recklessly deceptive or even intentionally *engineered* to deceive.

The jury heard Appellant begin by stating "I'm here to *update* your security" while pointing at Moody's front yard sign for Central Security Group.[32] The jury also heard Appellant's following statements: "I'll put a light *on it*, make it visible from the street" in order to "*update* the neighborhood."[33] To add to the obfuscation, Appellant was not wearing a uniform nor any badges identifying the company he was there to represent. From these facts alone, a jury could have found Appellant was being reckless in his conduct— the sum totality of his words and actions—up to this point.

But the inculpatory evidence heard by the jury did not stop there. Moody testified that Appellant managed to gain entry into the house and sit down at Moody's kitchen table. Moody testified that only sometime after the technician had already started uninstalling or rewiring Moody's alarm system did she realize that Appellant did not work for Central Security Group.[34] The evidence also showed that the earliest Moody could have known of Appellant's true employment status was either when she was given the contract to sign, or when she was on the phone with Capital Connect.

---

[32] (3 RR 24). We note that Appellant chose to use the word "update" which, given the context, would suggest an enhancement or a feature addon to a *preexisting device or system*.

[33] (3 RR 24–25) (emphasis added).

[34] The technician working with Appellant managed to arrive at the house and begin the uninstallation process roughly 15–20 minutes after Appellant entered Moody's home. (3 RR 38– 39).

The State, moreover, presented testimony from two other people living nearby, Andrew Davis and James Zike, who also had similar encounters with Appellant. Based on these encounters, a rational jury could have found that Moody's misimpression was not the result of an accidental misunderstanding, but the result of a calculated scheme to confuse and deceive. Zike testified that Appellant utilized similar tactics to gain the sale. Upon ringing his doorbell, Zike testified that Appellant offered to upgrade Zike's security system with no charge to Zike. "All I'd have to do was agree to put a solar light on my sign so people could see it at night."[35] Under the impression that Appellant worked for ADT—the company that Zike was then contracted with—Zike allowed Appellant to enter his home and introduced Appellant to his wife as an agent working for ADT Security. According to Zike, Appellant never said or did anything to correct the misimpression: "He did not. He did not correct me at all."[36] Zike testified that roughly thirty minutes passed before Appellant revealed that he did not work for ADT Security.

In Davis's encounter, Davis testified that Appellant approached him wearing multiple identification tags with multiple companies on them. They included Honeywell, Stanley, and ADT. This led Davis to believe Appellant was a representative of those companies, especially Stanley—the alarm company Davis was then contracted with to monitor his Honeywell home security equipment. According to Davis, Appellant said the following about the Stanley signs in his front and side yards: "We'll replace them with

---

[35] (4 RR 66).

[36] (4 RR 68).

14

lighted signs, and get a better advertisement *for the company.*"[37] Davis then asked him for his business card, to which Appellant responded: "Well, I'll get it to you when we talk about your system . . . . Why don't we go inside and sit down where you'd be comfortable." Davis testified that he did not receive the Appellant's Capital Connect business card until somewhere between an hour to an hour-and-half later. Until that point, Davis believed Appellant worked for Stanley. Davis testified that he would never have allowed Appellant into the house if he had known Appellant was not a Stanley operative.

Based on the totality of the evidence, a rational jury could have found Appellant was recklessly representing that he worked for Moody's then-current alarm company while in the course of business. Furthermore, it was undisputed that Appellant continued the deception of who he worked for until moments before Moody signed the contract. In doing so, the commodity and service he was advertising (the Capitol Connect alarm system equipment and monitoring service) were not of the particular style, grade, or model (Central Security Group alarm system and monitoring service) that Appellant *represented* it as. Viewing the evidence in a favorable light, we find it sufficient to support Appellant's conviction under Texas Penal Code Section 32.42(b)(7).

## II. Jury Unanimity

---

[37] (4 RR 15–16) (emphasis added). Appellant's *choice* of words, again, tend towards vagueness ripe with the potential to mislead the listener. Given the repeated behavior, the jury could have inferred that they were intentionally engineered thus.

15

Appellant reasons that the jury could have reached a non-unanimous verdict because the jury charge did not require the jurors to unanimously agree which of the three deceptive business acts Appellant committed. The trial court denied Appellant's request for a unanimity instruction on the three manner and means, and the court of appeals affirmed. Appellant argues that this was erroneous because the Deceptive Business Practices statute is a "nature of the conduct" offense. Thus, per Appellant, the jury must unanimously agree that a defendant committed one or more of the three specific acts. We disagree.

Jury unanimity is not required for the specific manners and means for this offense. The basis of our finding is found in the phrase "one or more of the following." The statute explicitly focuses on whether a person committed "one or more of the following deceptive business practices."[38] The language of the statute, on its face, does not focus on which of the provided definitions of "deceptive business practices" found in subsection (1)–(12) is triggered so long as at least one them is.[39] Thus, the specific manners and means constituting a "deceptive business practice" does not constitute an "essential element" of the offense.[40] The phrase would be rendered meaningless if Section 32.42(b) were to

---

[38] TEX. PENAL CODE § 32.42(b).

[39] TEX. GOV'T CODE § 311.021.

[40] *O'Brien*, 544 S.W.3d at 384. Appellant points out that the Legislature assigned different degrees of punishment for Section 32.42(b)'s subsections. Some are Class A misdemeanors. Others are Class C misdemeanors and none are felonies. Those different degrees of punishment suggest that the subsections of differing punishment severities are not "morally and conceptually equivalent." *Jefferson*, 189 S.W.3d at 313. Nevertheless, the three subsections in Appellant's charging instrument—b(7), b(9), and b(12)—are all Class A misdemeanors. While the prosecution would have to elect manners and means if the degrees of punishment varied, that is not the case

require jury unanimity in the specific manners and means.[41] Therefore, we treat the three alleged acts as alternative manner and means where jury unanimity is not required.

We conclude that jury unanimity is not required on the manners and means as listed in subsections (1)–(12). We find that the Legislature, based on the statutory language, intended to punish the act of deceptive business practices in general—not establish separate units of prosecution for each subsection within the same overall act. The trial court and the court of appeals, hence, did not err in reaching this conclusion.

**Conclusion**

We hold that (1) the evidence was sufficient to support Appellant's conviction on the first ground alleged in the information under Section 32.47(b)(7); and (2) jury unanimity was not required as to the manner and means. For these reasons, we affirm the court of appeals and the trial court.

Delivered: January 11, 2023
Publish

---

here.

[41] *See id*. at 388 ("By including the phrase 'one or more of the following' in the statute, the Legislature demonstrated that it was not focused upon the commission of specific predicate offenses as it was upon organized crime [Section 71.02].").