**Affirmed and Opinion filed July 10, 2018.**



**In The**

# 𝔉𝔬𝔲𝔯𝔱𝔢𝔢𝔫𝔱𝔥 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

## NO. 14-17-00098-CR

**MARC WAKEFIELD DUNHAM, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Criminal Court at Law No. 6
Harris County, Texas
Trial Court Cause No. 2109329**

## O P I N I O N

A jury convicted appellant Marc Wakefield Dunham of a deceptive business practice. *See* Tex. Penal Code § 32.42. The trial court assessed punishment at confinement in jail for one year, plus a $4,000 fine. In two issues, appellant contends that the evidence is insufficient to support his conviction and that the jury charge erroneously authorized a non-unanimous verdict. We affirm.

## I. SUFFICIENCY OF THE EVIDENCE

In his first issue, appellant contends that the evidence is insufficient to sustain his conviction for a deceptive business practice.

## A. Standard of Review

In a sufficiency review, we must consider all of the evidence in the light most favorable to the jury's verdict to determine whether, based on that evidence and reasonable inferences therefrom, any rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Balderas v. State*, 517 S.W.3d 756, 765–66 (Tex. Crim. App. 2016). We defer to the jury's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* at 766. The jury is the sole judge of the credibility and weight to be attached to witness testimony, and we must defer to the jury's resolution of conflicting inferences that are supported by the record. *See id.* When a sufficiency review involves the meaning of undefined statutory terms, such terms "are to be understood as ordinary use allows, and jurors may thus freely read statutory language to have any meaning which is acceptable in common parlance." *Clinton v. State*, 354 S.W.3d 795, 800 (Tex. Crim. App. 2011) (quoting *Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992)).

We measure the sufficiency of the evidence by "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct jury charge is one that (1) accurately sets out the law, (2) is authorized by the charging instrument, (3) does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and (4) adequately describes the particular offense for which the defendant was tried. *Id.* A hypothetically correct jury charge includes "the statutory elements of the offense . . . as modified

by the charging instrument." *Johnson v. State*, 364 S.W.3d 292, 294 (Tex. Crim. App. 2012) (omission in original) (quoting *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000)).

**B.     Charging Instrument and Statute**

The State alleged by information as follows:

> [I]n Harris County, Texas, MARC WAKEFIELD DUNHAM, hereafter styled the Defendant, heretofore on or about JUNE 15, 2016, did then and there unlawfully, in the course of business intentionally, knowingly and recklessly represent that a commodity or service is of a particular style, grade, or model if it was another, namely: by giving the impression to . . . the Complainant that an alarm system was a Central Security Group alarm system when it was actually a Capital Connect alarm system, and/or intentionally, knowingly and recklessly represent the price of property or service falsely or in a way tending to mislead, namely by telling the Complainant that a new alarm system installation would be free when such installation actually would require her to sign a new contract at additional cost, and/or intentionally, knowingly and recklessly make a materially false or misleading statement in connection with the purchase or sale of property or service, namely, by telling the Complainant that a new alarm system installation would be free when such installation actually would require her to sign a new contract at additional cost.

In relevant part, the statute provides:

> (b) A person commits an offense if in the course of business he intentionally, knowingly, recklessly, or with criminal negligence commits one or more of the following deceptive business practices:
>
> . . . .
>
>> (7) representing that a commodity or service is of a particular style, grade, or model if it is of another;
>
> . . . .
>
>> (9) representing the price of property or service falsely or in a way tending to mislead;
>
> . . . . or

3

(12) making a materially false or misleading statement:

. . . .

> (A) in an advertisement for the purchase or sale of property or service; or

> (B) otherwise in connection with the purchase or sale of property or service.

Tex. Penal Code § 32.42(b). The definition of "business" includes "trade and commerce and advertising, selling, and buying service or property." *Id.* § 32.42(a)(2).

## C.    The Evidence[1]

The complainant was about eighty years old at the time of the offense. She had a home security alarm system monitored by Central Security Group. There was a sign in the front of her yard with the name of the company on it.

Appellant was a door-to-door sales representative for Capital Connect, a different home security alarm monitoring company. On the day of the offense, appellant rang the complainant's doorbell. When the complainant answered, appellant pointed to the sign in the yard and said, "I'm here to update your security." He said that he would put a light on her sign and make it more visible from the street. He did not say what company he worked for. He was not wearing a uniform, nametag, or anything to identify what company he worked for.

---

[1] When, as here, the charging instrument alleges alternative manner and means in the conjunctive, then the proof of any one manner or means will support a guilty verdict. *Lehman v. State*, 792 S.W.2d 82, 84 (Tex. Crim. App. 1990); *see also Fuller v. State*, 827 S.W.2d 919, 931 (Tex. Crim. App. 1992) ("It is well-settled that when a general verdict is returned and the evidence is sufficient to support a finding of guilt under any of the paragraph allegations submitted the verdict will be upheld."). Because we ultimately hold that the evidence is legally sufficient, we focus on the evidence relevant to the first of the State's three allegations in the information, i.e., representing that a commodity or service was of a particular style, grade, or model when it was of another.

Believing that appellant worked for Central, the complainant invited appellant into her home. Appellant told her that installation of new features, such as wireless monitoring, would be "free." Ultimately, the complainant signed a five-year alarm monitoring agreement with Capital at a higher monthly cost than her previous service with Central.

The complainant testified that, before she signed the new contract, she "kept telling him that I can't do anything without my daughter's approval" because the daughter "tends to all of my business." The complainant testified that she realized appellant did not work for Central when he "presented the papers" to her. One of the documents the complainant signed was an "alarm upgrade agreement." The complainant initialed next to the statement: "I understand that Capital Connect has not bought, taken over or is in any way partnered with my current alarm monitoring company."

The complainant also spoke on the phone with a representative from Capital while appellant was in her home, and a recording of the call was admitted as an exhibit at trial. When the representative asked the complainant who she was paying to monitor her alarm system, the complainant said, "Central." The representative asked whether the complainant was having a new alarm system installed because the prior company was going out of business, had been taken over, or was no longer able to perform monitoring services. The complainant responded, "No, I'm just changing it up." Later, they had the following exchange:

| | |
|---|---|
| Representative: | Do you understand that by accepting this offer you will be changing alarm companies? |
| Complainant: | That I will what? |
| Representative: | You will be changing alarm companies. |
| Complainant: | I'm not understanding you. |

| Representative: | Capital Connect is a separate company from Central and so I'm just verifying— |
|---|---|
| Complainant: | Yes. |
| Representative: | —that you understand that. Ok. Great. And you understand that moving forward that you will no longer be with Central and that your monitoring and billing will be performed by Monotronix? |
| Complainant: | Right.[2] |

A few days later, the complainant canceled the new contract with Capital.

The State also introduced evidence regarding two additional instances when appellant had misled customers about who he worked for. The first witness testified that he was eighty years old at the time of trial. In July 2016, the witness was returning home at about 8:00 p.m. when appellant walked up to the witness in the driveway. Appellant had multiple "ID tags" or lanyards around his neck. The tags had the names of several companies, including Honeywell, Stanley, and ADT. Appellant told the witness, "I'd like to talk to you about your alarm system, your burglar alarm. I see you have Stanley." For about thirty minutes while they were conversing, the witness thought appellant worked for Stanley—the witness's then-current alarm monitoring company. The witness testified that appellant "probably misrepresented the fact that he was a Stanley operative." The witness testified that by the time he signed up for the new alarm system, he knew he was dealing with Capital.

The second witness testified that in June 2016, appellant came to the witness's door. The witness testified that appellant "said that he wanted to talk to me about upgrading my security system, that he had seen the sign outside saying that I had ADT Security." Because appellant referred to the sign in the witness's

---

[2] Later during the call, the complainant told the representative that she was "not hearing you good."

yard, the witness "assumed [appellant] was working for ADT." While they were inside the house, the witness told his wife that appellant was "with ADT Security." Appellant did not correct the witness at that time. Appellant was inside the witness's house for about thirty minutes before the witness realized that appellant did not work for ADT. The witness testified that the "first clue" that appellant did not work for ADT was the fact that the paperwork had "Capital Connect" written on it. The witness testified that he understood by the time he signed the contract that he was getting a Capital system.

## D.    Analysis

Appellant attacks the State's allegation that he recklessly represented that a commodity or service was of a particular style, grade, or model while it was of another. Under this argument, appellant makes three related claims: (1) he did not represent that the alarm system he offered to sell to the complainant was of any particular style, grade, or model; (2) any representations he made were accurate because the alarm system was not of a different style, grade, or model; and (3) he did not act with a culpable mental state of recklessness.

Appellant acknowledges that a representation can be made "by words or by conduct." But he contends that he did not represent that he was selling the complainant a Central alarm system because "he never misrepresented for whom he worked, and she knew that she was changing her alarm service from Central to Capital when she executed the contract." Thus, appellant focuses on what the complainant knew at the time she signed the contract.

The State, however, contends that the statute criminalizes conduct both leading up to and during the completion of a business transaction. Thus, the State contends that a "deceptive business practice can be committed in all aspects of the

7

transaction and is not excused merely by a signature on a contract stating appropriate terms."

We agree with the State. The relevant inquiry does not focus on what the complainant knew at the time she signed the contract; instead, it focuses on what appellant did—what he represented—during the course of business. *See* Tex. Penal Code § 32.42. The representation must be made "in the course of business," which includes "selling . . . service or property." *Id.* § 34.42(a)(2), (b).[3] The statute does not criminalize conduct of a defendant only when the defendant is successful in perpetrating a fraud. *See id.* § 34.42. Rather, the statute criminalizes the act of "representing"—an act that can occur before a completed transaction. *See Representation*, Black's Law Dictionary 1327 (8th ed. 2004) ("A presentation of fact—either by words or by conduct—made to induce someone to act, esp. to enter into a contract; esp., the manifestation to another that a fact, including a state of mind, exists."); *Represent*, Webster's Third New International Dictionary 1926 (1993) (including the definition "to describe as having a specified character or quality").

In this case, a rational juror could have understood the statutory word "representing" to include appellant's conduct and statement immediately after he initiated contact with the elderly complainant at her front door—pointing to the Central sign and stating "I'm here to update your security." A rational inference from this statement and conduct is that appellant was describing a Central alarm system, although he was not. *See, e.g.*, *Balderas*, 517 S.W.3d at 766 (must defer to jury's rational inferences and resolution of conflicting inferences supported by the record). Indeed, the complainant testified that appellant did not refer to a different

---

[3] Appellant acknowledges that the evidence "clearly establishes that appellant was 'in the course of business' because he was selling residential alarm systems door-to-door."

8

company's alarm system until appellant "presented the papers" to her after gaining entry to her home and discussing alarm system features with her. Under the evidence in this case, a rational juror could have found that appellant represented that a commodity or service was of a particular style, grade, or model when it was of another. *See* Tex. Penal Code § 32.42(b)(7); *cf. Agbogun v. State*, 756 S.W.2d 1, 2–3 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd) (sufficient evidence under Section 32.42(b)(7) when a pharmacist put a name-brand label on a bottle containing a generic drug).

Appellant acknowledges that the State, at a minimum, had to prove that appellant acted recklessly. The Penal Code provides the standard:

> A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

Tex. Penal Code § 6.03(c). Recklessness requires the defendant to "actually foresee the risk involved and to consciously decide to ignore it." *Williams v. State*, 235 S.W.3d 742, 751 (Tex. Crim. App. 2007). It is the callous disregard of risk, in a "devil may care" or "not giving a damn" attitude, that shows the culpable mental state of recklessness. *See id.* at 751–53.

The State may prove a culpable mental state such as recklessness through direct or circumstantial evidence, coupled with all reasonable inferences from that evidence. *See Balderas*, 517 S.W.3d at 766. "[T]he required culpable mental state must attach to the proscribed act at the time the conduct is engaged in." *Ely v. State*, 582 S.W.2d 416, 420 (Tex. Crim. App. [Panel Op.] 1979) (reasoning that

9

Section 32.42(b)(12)(B) is worded so as to preclude a conviction when a person makes "an honest representation at the time of the sale which subsequent business conditions renders objectively false at the time performance is required").

Here, the State met its burden to show that appellant made the false representation at least recklessly. Appellant did not volunteer the name of the company he worked for before entering the complainant's home. He did not initially tell the complainant who he worked for while talking with her about alarm system features after gaining entry to her home. The complainant did not learn that appellant was selling a Capital system until appellant "presented the papers." He was not wearing a uniform or a nametag, or anything else to identify that he worked for Capital rather than Central.

The State presented evidence regarding two uncharged extraneous offenses, which showed that appellant employed the same or similar tactic on other people. He pointed to their alarm system signs, for companies other than Capital, and misled the customers into believing that he worked for those companies. In one instance, he wore multiple lanyards of different companies, and in the other instance, he failed to correct the customer's statement that appellant worked for a company other than Capital. In both instances, the customers did not learn the true style, grade, or model of the alarm systems that appellant was peddling until nearly thirty minutes into the conversations.

From this evidence, a rational juror could have found that appellant actually foresaw the risk involved—that he was representing the Capital alarm system as a Central one—and that he consciously disregarded this risk.

Appellant's first issue is overruled.

## II.    JURY UNANIMITY

In his second issue, appellant contends that the jury charge erroneously authorized a non-unanimous verdict because the charge did not require the jury to agree about which of the three statutory allegations appellant committed. This issue is one of first impression for the offense of deceptive business practices.

A jury in Texas must reach a unanimous verdict. *O'Brien v. State*, 544 S.W.3d 376, 382 (Tex. Crim. App. 2018). The jurors must agree that the defendant committed one specific crime, but not that the defendant committed the crime in one specific way or even with one specific act. *Id.* The jurors must agree on each essential element of the crime. *Id.* But the requirement of unanimity is not violated when the jury charge "presents the jury with the option of choosing among various alternative manner and means of committing the same statutorily defined offense." *Id.*

We examine the statute defining the offense to determine whether the Legislature created (1) multiple, separate offenses, or (2) a single offense with different methods or means of commission. *Pizzo v. State*, 235 S.W.3d 711, 714 (Tex. Crim. App. 2007). "We determine what the jury must be unanimous about by conducting a statutory analysis that seeks to ascertain the focus or gravamen of the offense." *O'Brien*, 544 S.W.3d at 383. There are three general categories of criminal offenses: result of conduct, nature of conduct, and circumstances of conduct. *See Young v. State*, 341 S.W.3d 417, 423 (Tex. Crim. App. 2011).

Appellant contends that Section 32.42 is a nature-of-conduct offense while the State contends that it is a circumstances-of-conduct offense. If the gravamen of the crime is the nature of the conduct, the jury must be unanimous about the specific criminal act committed. *O'Brien*, 544 S.W.3d at 383. However, if the

gravamen of the crime is a circumstance surrounding the conduct, unanimity is required about the existence of the particular circumstance of the offense. *Id.*

For example, many sex-offense statutes are written is such a way as to indicate that they are nature-of-conduct offenses because the act itself is the gravamen of the offense. *See Young*, 341 S.W.3d at 423. For a circumstances-of-conduct offense, however, the focus of the statute is on the particular circumstances that exist rather than the discrete, and perhaps different, acts that the defendant might commit under those circumstances. *Id.* at 424. The offense of failing to stop and render aid is one example; the focus is the existence of an automobile accident. *Id.*

Determining the gravamen of an offense is primarily a question of the Legislature's intent. *O'Brien*, 544 S.W.3d at 384. To determine the Legislature's intent, we look to the statutory text. *Id.* "If the plain language is clear and unambiguous, our analysis ends because the Legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from such a statute." *Id.* (quotations omitted). Every word, phrase, and clause in the statute should be given effect if reasonably possible. *Id.*

One analytical model employed by the Court of Criminal Appeals is the "eighth-grade-grammar test" whereby the court focuses on the statutory verb and its direct object. *See id.* at 386. At a minimum, the elements of an offense include:

- the subject (the defendant);
- the main verb;
- the direct object if the main verb requires a direct object (i.e., the offense is a result-oriented crime); and
- the specific occasion (the date phrase within the indictment, but narrowed down to one specific incident regardless of the date alleged).

12

*See id.* (citing *Jefferson v. State*, 189 S.W.3d 305, 316 (Tex. Crim. App. 2006) (Cochran, J., concurring)). Ordinarily, adverbial phrases are not "elemental" for purposes of jury unanimity. *Kent v. State*, 483 S.W.3d 557, 560 (Tex. Crim. App. 2016); *see also O'Brien*, 544 S.W.3d at 386 ("Generally, adverbial phrases, introduced by the preposition 'by,' describe the manner and means of committing the offense. They are not the gravamen of the offense, nor elements on which the jury must be unanimous." (quotation omitted)). Nature-of-conduct offenses "generally use different verbs in different subsections" of the statute to indicate that the Legislature intended to punish distinct types of conduct. *Young*, 341 S.W.3d at 424.

"[W]e apply the rules of grammar to the text of the statute describing the offense in the context of the entire scheme to attempt to discern the Legislature's intent in passing the statute." *O'Brien*, 544 S.W.3d at 387. For example, in *O'Brien* the court addressed the unanimity requirements for the offense of engaging in organized criminal activity. *See id.* at 379 (citing Tex. Penal Code § 71.02). That statute begins with a structure similar to the deceptive business practices statute:

| **Section 71.02(a)** | **Section 32.42(b)** |
|---|---|
| A person commits an offense if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination or as a member of a criminal street gang, the person commits or conspires to commit one or more of the following: . . . | A person commits an offense if in the course of business he intentionally, knowingly, recklessly, or with criminal negligence commits one or more of the following deceptive business practices: . . . |

Then, in separately enumerated paragraphs, Section 71.02(a) lists various nouns composed of different criminal offenses such as murder, promotion of prostitution, or "any felony offense under Chapter 32." *See* Tex. Penal

13

Code § 71.02(a)(1), (3), (8). Similarly, Section 32.42(b) includes a list of phrases beginning with nouns—gerunds such as "selling," "passing off," or "representing." *See id.* § 32.42(b)(2), (5), (9).[4]

The Court of Criminal Appeals noted that some aspects of Section 71.02(a) favored a result-of-conduct offense, while others favored a nature-of-conduct offense. *See O'Brien*, 544 S.W.3d at 389. For example, the grammar test showed a similarity to result-of-conduct offenses because the statute features a verb ("commits or conspires to commit") that requires a direct object ("one or more of the following"). *See id.* at 387. The court focused on the language "one or more of the following" in the statute. *See id.* at 387–88. The court analogized to the felony murder statute (a result-of-conduct offense) under which unanimity is not required for the underlying felony. *See id.* at 387, 389.

"More importantly," the court explained, the Legislature's inclusion of the phrase "one or more of the following" showed "the Legislature's focus upon the creation of a criminal combination rather than upon a specific predicate offense." *Id.* at 388. This phrase in particular demonstrated that the Legislature "was not as focused upon the commission of a specific predicate offense[] as it was upon organized crime." *Id.* The court reasoned that interpreting the statute as a nature-of-conduct offense would "render the Legislature's use of the phrase 'one or more of the following' meaningless." *Id.*

---

[4] Bryan Garner writes that a gerund is a present participle used as a noun. *The Chicago Manual of Style* 5.110, at 176 (15th ed. 2003). A gerund may be used as the object of a verb or of a preposition—for example, "reduce erosion by *terracing* the fields." *Id.* (emphasis added). In her oft-cited concurrence in *Jefferson*, Judge Cochran provides examples of "adverbial phrases" that are also gerunds used as objects of prepositions. *See* 189 S.W.3d at 315 (giving examples of adverbial phrases that follow the phrase "caused serious bodily injury," such as "by striking [the complainant] with his foot" and "by causing [the complainant's] head to strike an unknown object").

The court held, therefore, that the organized crime statute creates a circumstances-of-conduct offense. *Id.* at 389. Accordingly, a jury is not required to unanimously agree upon which "one or more of the following" predicate crimes the defendant has committed to support a conviction for engaging in organized criminal activity. *See id.* at 379.

We reach the same conclusion regarding the deceptive business practices statute. The second use of the verb "commits" in the statute requires the direct object "one or more of the following." The Legislature's use of "one or more of the following" shows that the Legislature was not as focused on the commission of a specific act as much as the Legislature was focused on the defendant's being "in the course of business." *Cf. id.* at 388. Interpreting the statute as a nature-of-conduct offense would render meaningless the Legislature's use of the phrase "one or more of the following." *See id.* The deceptive business practices statute, therefore, creates a circumstances-of-conduct offense. A jury is not required to unanimously agree upon which of the "one or more of the following" acts the defendant has committed.

Appellant contends, however, that this interpretation is incorrect because the punishment classification of the offense can depend upon which act the defendant commits. *See* Tex. Penal Code § 32.42(c)–(d). An offense under subsections (b)(7) through (b)(12) is always a Class A misdemeanor. *Id.* § 32.42(d). But, depending on the defendant's culpable mental state and whether the defendant has a prior conviction, an offense under (b)(1) through (b)(6) may be classified as a Class A or Class C misdemeanor. *See id.* § 32.42(c). The Legislature's assignment of different punishment ranges to different statutory subsections may indicate that the subsections represent different offenses rather than manners or means of committing the same offense. *See Gillette v. State*, 444 S.W.3d 713, 728 (Tex.

App.—Corpus Christi 2014, no pet.) (citing *Jones v. State*, 323 S.W.3d 885, 890 (Tex. Crim. App. 2010)). However, the Court of Criminal Appeals has cautioned that "[s]eparate punishment provisions . . . should carry little weight in the analysis" because there are "more weighty factors" available. *Jones*, 323 S.W.3d at 890.[5]

A similar argument was made in *O'Brien*. The punishment of a defendant convicted of engaging in organized criminal activity depends on which underlying "predicate" offense is committed. *See* Tex. Penal Code § 71.02(b). The dissenting judges in *O'Brien* found this aspect of the statute persuasive for determining that a jury must be unanimous about the underlying conduct. *See* 544 S.W.3d at 398 (Yeary, J., dissenting); *id.* at 401 (Walker, J., dissenting). The majority did not. *See id.* at 388 n.46 (majority op.). Rather, the majority noted that a conviction based on different underlying predicate offenses involving different punishment ranges could create a due process violation. *See id.* at 394 n.89. But *O'Brien* was no such case because the predicate offenses carried the same degree of punishment. *See id.*

The same rationale applies here. Appellant was charged with violating three paragraphs—(7), (9), and (12)—which always result in punishment as a Class A misdemeanor. *See* Tex. Penal Code § 32.42(d). We need not decide in this case whether unanimity might be required, under a due process theory, if the State

---

[5] *Jones* was a double-jeopardy case, but there are "intertwining strands" in double-jeopardy and jury-unanimity cases because courts must ascertain the focus or gravamen of an offense. *See Johnson v. State*, 364 S.W.3d 292, 296 (Tex. Crim. App. 2012); *see also Huffman v. State*, 267 S.W.3d 902, 905 (Tex. Crim. App. 2008) ("Our jury unanimity opinions and several of our double jeopardy opinions address the same basic question: In a given situation, do different legal theories of criminal liability comprise different offenses, or do they comprise alternate methods of committing the same offense?").

alleges alternate methods of committing the offense based on paragraphs incorporating different punishment ranges. *See O'Brien*, 544 S.W.3d at 394 n.89.[6]

In sum, the plain text of Section 32.42 indicates that the gravamen of the offense is the circumstances surrounding the conduct—namely, the defendant being in the course of business. Thus, under the plain text of the statute, unanimity is not required for the "one or more" underlying acts listed in subsection (b).

Appellant's second issue is overruled.

### III.   CONCLUSION

Having overruled both of appellant's issues, we affirm the trial court's judgment.

/s/     Ken Wise
        Justice

Panel consists of Justices Boyce, Donovan, and Wise.

Publish — Tex. R. App. P. 47.2(b).

---

[6] Appellant does not contend in this appeal that unanimity is required by the Due Process Clause of the United States Constitution. *See O'Brien*, 544 S.W.3d at 383–84 & n.13, 393–94 (recognizing that due process may require unanimity even if the statute itself does not). Thus, we do not address the separate question of whether the alternate manner and means alleged in this case were "morally and conceptually equivalent." *See id.* at 393–94; *see also* Tex. R. App. P. 47.1.