

# In the Court of Criminal Appeals of Texas

No. PD-0831-18

MARC WAKEFIELD DUNHAM,

*Appellant*

v.

THE STATE OF TEXAS

On Appellant's Petition for Discretionary Review
From the Fourteenth Court of Appeals
Harris County

YEARY, J., filed a dissenting opinion.

Appellant was charged in a single-count, single-paragraph information with the misdemeanor offense of Deceptive Business Practices under Section 32.42(b) of the Texas Penal Code. TEX. PENAL

CODE § 32.42(b).[1] Specifically, he was charged with intentionally,

---

[1] In its entirety, Section 32.42(b) reads:

(b)   A person commits an offense if in the course of business he intentionally, knowingly, recklessly, or with criminal negligence commits one or more of the following deceptive business practices:

(1)  using, selling, or possessing for use or sale false weight or measure, or any other device for falsely determining or recording any quality or quantity;

(2)   selling less than the represented quantity of a property or service;

(3)   taking more than the represented quantity of a property or service when as a buyer the actor furnishes the weight or measure;

(4)   selling an adulterated or mislabeled commodity;

(5)  passing off property or service as that of another;

(6)   representing that a commodity is original or new if it is deteriorated, altered, rebuilt, reconditioned, reclaimed, used, or secondhand;

*(7)   representing that a commodity or service is of a particular style, grade, or model if it is of another;*

(8)   advertising property or service with intent:

(A)  not to sell it as advertised, or

knowingly, or recklessly committing three of the twelve modes of deceptive business practice explicitly enumerated in the statute. *Id.* § (b)(7), (9), & (12)(B). The trial court authorized the jury to convict him without requiring it to be unanimous with respect to which of these three alleged modes of deceptive business practice he committed, over Appellant's objection. On appeal, Appellant argued both that the evidence was legally insufficient to convict him of any of the three modes

---

(B) not to supply reasonably expectable public demand, unless the advertising adequately discloses a time or quantity limit;

*(9) representing the price of property or service falsely or in a way tending to mislead;*

(10) making a materially false or misleading statement of fact concerning the reason for, existence of, or amount of a price or price reduction;

(11) conducting a deceptive sales contest; or

*(12) making a materially false or misleading statement:*

*(A)* in an advertisement for the purchase or sale of property or service; or

*(B) otherwise in connection with the purchase or sale of property or service.*

TEX. PENAL CODE § 32.42(b) (emphasis reflects the three modes of deceptive business practice Appellant is alleged to have committed).

alleged in the information and that the trial court erred in not requiring a unanimous jury verdict with respect to at least one of those modes.

The court of appeals affirmed. *Dunham v. State*, 554 S.W.3d 222, 234 (Tex. App.—Houston [14th Dist.] 2018). It concluded that the evidence was legally sufficient to support the *first* of the three modes of deceptive business practice alleged (Section 32.42(b)(7)), expressing no opinion with respect to the legal sufficiency of the evidence to establish the other two. *Id*. at 227–28 & n.1. It also concluded that the trial court did not err in failing to require jury unanimity. *Id*. at 234. We granted discretionary review to consider both of these conclusions.

Today, the Court affirms the judgment of the court of appeals. It determines that (1) the evidence was indeed legally sufficient to establish the first alleged mode of deceptive business practice (and, like the court of appeals, therefore does not address the sufficiency of the evidence to support other two alleged modes), and (2) the twelve modes of committing a deceptive business practice constitute mere manner and means of committing the same offense, and therefore do not require jury unanimity. I disagree on both counts, and I would reverse the judgment of the court of appeals and remand for further proceedings. Because the Court does not, I respectfully dissent.

## I.  LEGAL SUFFICIENCY TO PROVE DECEPTIVE BUSINESS PRACTICE

Section 32.42(b) makes it an offense if a person, "in the course of business . . . intentionally, knowingly, recklessly, or with criminal negligence commits one or more of the following deceptive business practices[.]" TEX. PENAL CODE § 32.42(b). It then lists twelve specific acts that would constitute actionable conduct under the statute, including

the three that were alleged in the information to have been committed by Appellant, namely:

> (7) representing that a commodity or service is of a particular style, grade, or model if it is of another;

> \* \* \*

> (9) representing the price of property or service falsely or in a way tending to mislead;

> \* \* \*

> (12) making a materially false or misleading statement:

> \* \* \*

> > (B) . . . in connection with the purchase or sale of property or service.

TEX. PENAL CODE § 32.42(b)(7), (9), & (12)(B).

In charging Appellant with deceptive business practice number (7), the information alleged that he represented to Eloise Moody "that a commodity or service is of a particular style, grade, or model if it was another, namely: by giving the impression to [Moody] that an alarm system was a Central Security Group alarm system when it was actually a Capital Connect alarm system[.]"[2] The court of appeals limited its legal sufficiency analysis to determining whether the evidence

---

[2] To the extent Appellant may have misrepresented the identity of the home alarm company he worked for, his conduct would seem more appropriately to fit within the theory of deceptive business practice listed in Section 32.42(b)(5): "passing off property or service as that of another[.]" TEX. PENAL CODE § 32.42(b)(5). But Appellant was not charged under this theory in the information.

established this allegation, and did not address whether it also sufficiently established the allegations drawn from Subsections (b)(9) and (b)(12)(B). *Dunham*, 554 S.W.3d at 227–28 & n.1. The Court today also limits its consideration accordingly. Majority Opinion at 10 ("Because the State offered sufficient evidence under the first allegation under Section 32.42(b)(7), we need not examine the other two."). So, whether the evidence is legally sufficient to establish those allegations is not presently before us.

Appellant's brief makes what seems to me to be three arguments why the State's evidence failed to prove deceptive business practice number (b)(7). Each of these distinct arguments should be addressed by the Court's opinion to dispose of Appellant's sufficiency claim. But the Court's opinion, in my view, reaches only his first argument, failing entirely to address his other two. So, I will identify each of them here separately.

First, Appellant argues that there is no evidence that he ever affirmatively *represented* to Moody that what he was offering her was a commodity or service that was of a style, grade, or model different than what it actually was.[3] This is the only argument made by Appellant that

---

[3] *See* Appellant's Brief on the Merits on Petition for Discretionary Review at 14 ("[A]ppellant did not 'represent' by words or conduct that he was selling Moody a Central system. To the contrary, he never misrepresented for whom he worked, and she knew that she was changing her service from Central to Capital when she executed the contract."). The other alleged subsections of Section 32.42(b) incorporate the concept of *misleading* in the course of conducting business. *E.g.*, TEX. PENAL CODE § 32.42(b)(9), (b)(12)(B), quoted in the text above. But Section 32.42(b)(7) would seem to require an explicit misrepresentation.

the Court today really engages with and rejects. *See* Majority Opinion at 10–16 (concluding that "the word [represent] includes, and the statute criminalizes, the defendant's conduct leading up to and during the completion of a business transaction" and that "Appellant's words and actions in their totality were either recklessly deceptive or even intentionally *engineered* to confuse Moody as much as possible"). Then, after rejecting Appellant's argument, the Court concludes that the evidence was sufficient to establish Appellant's guilt under Section 32.42(b)(7).

But Appellant also argues, second, that the court of appeals' opinion focused not on what he *did* say or do in his interaction with Moody so much as on what he *failed* to say or do. Appellant argues that, by shifting the focus in this way, the court of appeals has converted an offense of *commission* into an offense of *omission*—without ever identifying any specific legal duty that obliged him to act. *See* TEX. PENAL CODE § 6.01(c) ("A person who omits to perform an act does not commit an offense unless a law . . . provides that the omission is an offense or otherwise provides that he has a duty to perform the act.").[4] The Court makes no mention of this argument—even as it, like the court of appeals, seems to focus its attention at least *partly* on Appellant's *failure to act* to correct any misimpression Moody may have been

---

[4] Appellant's Brief on the Merits on Petition for Discretionary Review at 16–18; *see also id.* at 18 ("The court of appeals ignored [A]ppellant's [S]ection 6.01(c) argument, even though he made it during oral argument."); *id.* at 21 ("If the Legislature is offended by [A]ppellant's tactics, it may amend the statute to criminalize omissions by providing affirmative duties to act."). Today this Court also ignores this argument.

operating under.[5] *See* Majority Opinion at 12 ("Appellant was not wearing a uniform nor any badges identifying the company he was there to represent.").

But it is Appellant's third argument that really catches my attention. It, too, is an argument that the Court fails to acknowledge.[6] In it, Appellant maintains that, even if he created a misimpression in Moody's mind (whether by commission or omission) about the particular home security company he worked for (Central rather than Capital), this does not amount to a representation that the *commodity or service* he installed was of a *"style, grade, or model"* that was different than (and, especially, inferior to) what he had offered her.[7] TEX. PENAL CODE § 32.42(b)(7) (emphasis added). In fact, Appellant insists, what he installed was exactly the upgraded security system he promised her,

---

[5] *See* TEX. PENAL CODE § 1.07(34) ("'Omission' means failure to act."); *id*. § 1.07(10) ("'Conduct' means an act or omission and its accompanying mental state.").

[6] The court of appeals simply assumed that a misrepresentation as to the company Appellant worked for constituted a misrepresentation about the "style, grade, or model" of the alarm system he was offering to install, without any analysis of the question. *Dunham*, 554 S.W.3d at 230. So does this Court. Majority Opinion at 15. Neither court addresses whether Appellant might more appropriately have been charged under Section 32.42(b)(5).

[7] *See* Appellant's Brief on the Merits on Petition for Discretionary Review at 15 ("[A]ppellant did not tell or otherwise represent to Moody that he was providing her with an updated Central system, only to cause an inferior Capital system to be installed."); *id*. at 18 ("Had he promised to install a superior alarm system but really installed an inferior one, that act would have violated the statute."); *id*. at 19 ("Had he told her he was going to update her system knowing that he would make no material improvements to it, or that he would install an inferior one, his statement would have been criminal.").

albeit from another service provider.[8] That it should be the product of a different *company* does not, Appellant contends, constitute a deceptive business practice—at least not of the kind envisioned by Subsection (b)(7) of the statute. I find myself persuaded by this argument.

The terms "style, grade, or model" are not defined in the Penal Code, and insofar as I know, they do not have a technical meaning to which we must defer. *Ramos v. State*, 303 S.W.3d 302, 307 (Tex. Crim. App. 2009). We may therefore resort to dictionary definitions. *Id.* In doing so, we must also take heed of the "associated-words" "contextual" canon of statutory construction, by which we are to seek the common-denominator to discern the terms' most apt applications.[9] A standard dictionary from shortly before the inception of the 1974 Penal Code, wherein Section 32.42 first appeared,[10] defines these words (as

---

[8] *See* Appellant's Brief on the Merits on Petition for Discretionary Review at 15 ("Every affirmative representation that [A]ppellant made regarding a commodity or service was accurate."). Again, it was only the service provider he was deceptive about. *See* TEX. PENAL CODE § 32.42(b)(5) ("passing off property or service as that of another").

[9] *See* Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS (2012) at 195 ("When several nouns or verbs or adjectives or adverbs—any words—are associated in a context suggesting that the words have something in common, they should be assigned a permissible meaning that makes them similar.").

[10] Section 32.42 appeared in its present form for the first time in the 1974 Penal Code, but it was intended to bring together previously disparate statutory provisions. *See* Seth S. Searcy III & James R. Patterson, Practice Commentary to Section 32.42, V.A.P.C. (1989), at 219 ("Many of the offenses in this section previously appeared in scattered corners of the Texas statutes. * * * [T]his section fills a need for a comprehensive criminal provision on deceptive business practices."). That Section 32.42(b) thus constitutes a convenient compilation of previously "scattered" statutory provisions would seem to lend itself to an inference that the subsections of present Section

contextually relevant) to mean the following:

> "style": "a general category based on somewhat similar characteristics (as of outward appearance) <a modern ~ of furniture>". WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED (1961), at 2271.

> "grade": "a position or level in a course of advancement or decline or in a scale of ranks, qualities, or orders"; also, "a class constituted by things that are at the same stage or have the same relative position, level, rank or degree". *Id*. at 984.

> "model": "structural design: PATTERN". *Id*. at 1451.

The common denominator of these terms is that they go to the particular quality, characteristic, or relative value of a thing. To represent that a "commodity or service" is of one "style, grade, or model" when, in fact, it is of another, by the related sense of these definitions, suggests that the commodity or service must be represented to be of a certain distinctive quality, characteristic, or relative value when, in fact, "it" (that is, the "commodity or service") is of "another" distinctive quality, characteristic, or relative value. TEX. PENAL CODE § 32.42(b)(7). A misrepresentation as to the *source*, *provider*, or *supplier* of the "commodity or service" would not, in my view, constitute a misrepresentation of the distinctive quality, characteristic, or value of *the commodity or service itself*.

It seems evident enough to me, then, that Subsection (b)(7) is aimed at a deceptive business practice whereby a person

---

32.42(b) should be regarded as discrete offenses, not mere manner and means of committing a single offense. I will speak to this at greater length in Part II of this opinion, addressing the jury-unanimity issue.

mischaracterizes something about the essential nature or relative status of the commodity or service itself, and nothing about the *entity* that purports to *provide* that commodity or service. Understanding that provision in this way, I conclude that the evidence is insufficient to show commission of an offense under Section 32.42(b)(7). There is simply nothing in the present record to show that Appellant said or did (or failed to do) anything that would constitute a misrepresentation of the "style, grade, or model" of the upgraded security system he offered to Moody. While he seems plainly to have misled her (whether by act or omission) into believing he was an agent of her current home security company, that would seem to constitute an offense under Section 32.42(b)(5) ("passing off property or service as that of another"), which is a mode of deceptive business practice that was not alleged.[11] He never misled her (even assuming that simply *misleading* her would satisfy Section 32.42(b)(7)) with respect to the essential nature or relative status of the *commodity or service* he was offering her.

For this reason, if no other, I agree with Appellant that the evidence is legally insufficient to establish that he committed a deceptive business practice *as defined by Section 32.42(b)(7)*. I would hold the evidence legally insufficient to establish Appellant's guilt under *that* mode of deceptive business practice. I would remand the cause to the court of appeals for an analysis of whether the evidence was legally

---

[11] Appellant could readily have been prosecuted under this subsection—32.42(b)(5)—for misrepresenting the service provider he worked for. And that fact, I believe, bolsters my conclusion that Section 32.42(b)(7) should *not* be understood to embrace a misrepresentation of the source, provider, or supplier of a commodity or service, since that conduct is already plainly covered by Section 32.42(b)(5).

sufficient to establish either of the other two modes of deceptive business practice (Subsections (b)(9) and (b)(12)(B)) alleged in the information.

## II. JURY UNANIMITY

This Court has observed that, "[u]nder state law, the jury must be unanimous in finding every constituent element of the charged offense in all criminal cases." *Jourdan v. State*, 428 S.W.3d 86, 94 (Tex. Crim. App. 2014) (citing *Pizzo v. State*, 235 S.W.3d 711, 714 (Tex. Crim. App. 2007)). Today, the Court seems to treat the three statutory modes of committing deceptive business practice from Section 32.42(b) that Appellant was alleged to have committed as if they were elements for purposes of its legal sufficiency analysis. Majority Opinion at 9. Anomalously, however, the Court then declares those modes to be no more than statutory manner and means for purposes of its jury-unanimity analysis.[12] *Id.* at 17. It cannot be both.

In concluding (at least for jury-unanimity purposes) that the subsections of Section 32.42(b) are mere manner and means, the Court focuses exclusively on one phrase from the preamble: "one or more of the following." *Id.* at 16–17. I concede that this language *might* suggest that Section 32.42(b)(1) through 32.42(b)(12) ought to be considered alternative ways of committing a single offense of deceptive business practices. But the Court errs to limit its analysis to the import of this phrase when there are still other relevant and weightier considerations.

---

[12] *See* George E. Dix & John M. Schmolesky, 43 TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 43:21, at 890 (11th ed. 2011) ("Unanimity is generally not required as to alternative theories of proof when the statute in question establishes different modes or means by which the offense may be committed or proven.").

The Court cites *O'Brien v. State*, 544 S.W.3d 376, 388 (Tex. Crim. App. 2018), for the proposition that the Legislature's use of the language "one or more of the following" should lead it to conclude that Sections 32.42(b)(1) through 32.42(b)(12) are mere manner and means of committing the offense. But in construing the Organized Criminal Activity statute in *O'Brien*, the Court regarded the existence of a similar phrase as but one, albeit "important" consideration among others. On balance, I would conclude that the various modes of deceptive business practice listed in the statute constitute "elements" of discrete offenses, both for purposes of a legal sufficiency analysis *and* for jury-unanimity purposes.

## A. Statutory History

First, there is the history of the statute to consider. In construing a statute, the Court has often taken account of statutory history, as part of its analysis of the literal statutory language *in context. See Timmons v. State*, 601 S.W.3d 345, 354 n.50 (Tex. Crim. App. 2020) (quoting Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS (2012), at 256: ("defining 'statutory history' as 'the statutes repealed or amended by the statute under consideration' and explaining that statutory history 'form[s] part of the context of [a] statute'")). When the Legislature first adopted Section 32.42(b) in the 1974 Penal Code, it also repealed a number of disparate former penal code provisions that had independently defined certain deceptive business practices, each forming separate offenses, with the evident purpose of simply consolidating them into a single "comprehensive" penal provision. *See* Seth S. Searcy III & James R. Patterson, Practice

Commentary to Section 32.42, V.A.P.C. (1989), at 219 ("Many of the offenses in this section previously appeared in scattered corners of the Texas statutes. * * * [T]his section fills a need for a comprehensive criminal provision on deceptive business practices."). Nothing in the Practice Commentary suggests that by consolidating these various discrete offenses for the sake of convenience, the Legislature purported to convert what had previously been elements of various distinct statutorily actionable offenses into mere manner and means of committing one statutory offense.

### B.  Type of Offense

Next, the Court fails even to inquire what type of offense Section 32.42(b) constitutes: (1) nature of conduct; (2) result of conduct; or (3) circumstance surrounding conduct. *See* TEX. CODE CRIM. PROC. art. 6.03. Nature-of-conduct offenses, the Court has said, tend to define separate offenses in their various provisions, using "different verbs in different subsections, an indication that the Legislature intended to punish distinct types of conduct." *Young v. State*, 341 S.W.3d 417, 424 (Tex. Crim. App. 2011). Result-of-conduct offenses, by contrast, are typically concerned with conduct which causes a particular harmful result, with "cause" as the operative verb, and adverbial descriptions of disparate ways in which the result may be "caused," mere manner and means. *Id.* at 423–24. And finally, "[w]ith an offense whose criminality depends upon the 'circumstances surrounding the conduct,' the focus is on the particular circumstances that exist rather than the discrete, and perhaps different, acts that the defendant might commit under those circumstances." *Id.* at 424. Determining the type of offense that a statute

creates helps to distinguish elemental conduct from the less essential manner-and-means provisions. *Id*. at 423. But the Court undertakes no such analysis today.

The literal text of Section 32.42(b) plainly incorporates both a circumstance-surrounding-conduct component and a plethora of distinctive potential nature-of-conduct components, making these distinctions between (1) nature of conduct; (2) result of conduct; or (3) circumstances surrounding conduct less determinative of the gravamen of the offense as an analytical tool here. There is, first, the overriding requirement in the preamble that the proscribed conduct be found to occur "in the course of business." This clearly constitutes a circumstance surrounding conduct, which, *in isolation*, might be thought to wholly dictate the so-called "gravamen" of the offense. *See Huffman v. State*, 267 S.W.3d 902, 907 (Tex. Crim. App. 2008) ("If 'circumstances surrounding conduct' is the focus of the offense, then under a focus-based approach to determining separateness of offenses, different types of conduct could establish alternate methods of committing the same offense rather than different offenses, so long as the circumstances surrounding the conduct are the same."). But there is much more to this statute than the circumstance surrounding conduct, and the preamble itself does not in any way describe the proscribed conduct (apart from the culpable mental state) that constitutes the commission of the offense, other than to set out the general descriptor: "deceptive business practices."[13]

---

[13] I doubt this Court would uphold a convinction for an offense under the statute if the State were to prove only that "in the course of business" the

When the statute then goes on to particularize the acts that give substance to this general descriptor, it uses decidedly "nature-of-conduct" language to do so, identifying very specific kinds of acts. That suggests to me that the Legislature meant for those acts to constitute separately actionable offenses; that the specifically enumerated acts proscribed in each subsection of Section 32.42(b) should be considered no less elemental than they would have been in the discrete former penal code provisions from which they might have been taken. In short, this is a statute in which the gravamen seems to derive from *both* the *circumstances* surrounding, and *also* from the particular *nature* of, the conduct.[14]

## C. Eighth-Grade Grammar

But what about the so-called "eighth-grade grammar" approach to determining what jurors must be unanimous about?[15] It is true that,

---

defendant committed some "deceptive business practice" other than one of those specifically listed among the options provided in Section 32.42(b).

[14] That all twelve of the subsections of Section 32.42(b) read like "nature-of-conduct" provisions distinguishes this case from *O'Brien*. There, the Court noted that the list of predicate offenses in the Organized Criminal Activity statute were of varying types, not limited to "nature-of-conduct" type of offenses. *O'Brien*, 544 S.W.3d at 387.

[15] *See Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007) ("In sum, we must return to eighth-grade grammar to determine what elements the jury must unanimously find beyond a reasonable doubt. At a minimum these are: the subject (the defendant); the main verb; and the direct object if the main verb requires a direct object (i.e., the offense is a result-oriented crime) . . . . Generally, adverbial phrases, introduced by the proposition 'by,' describe the manner and means of committing the offense. They are not the gravamen of the offense, nor elements on which the jury must be unanimous.") (quoting with approval *Jefferson v. State*, 189 S.W.3d 305, 315–16 (Tex. Crim. App. 2006) (Cochran, J., concurring)).

strictly speaking, all of the subsections of Section 32.42(b) begin with gerunds rather than active verbs: "using, selling, or possessing"; "selling"; "taking"; "selling"; "passing"; "representing"; "advertising"; "representing"; "making"; "conducting"; and "making". It might be argued that they therefore operate more like adverbial phrases in the so-called "eighth-grade grammar" approach this Court has adopted as a sometimes-useful tool for discerning statutory gravamens. But this test is not expected to "work invariably, in every scenario, to accurately identify" the gravamen of an offense. *Leza v. State*, 351 S.W.3d 344, 357 (Tex. Crim. App. 2011).

Here, the statute requires *both* that particularly specified conduct be committed, and that it be committed "in the course of business," before a completed offense may be said to have occurred. Moreover, the statute plainly limits the ways in which "deceptive business practices" may be committed to "the following"—that is to say, to those that are exclusively listed in Sections 32.42(b)(1) through 32.42(b)(12). TEX. PENAL CODE § 32.42(b). I doubt the Court would take the position that a defendant may be prosecuted under the statute under some *other* theory of "deceptive business practice" that is not enumerated in the statute. In fact, the Court seems to acknowledge as much by essentially treating the three modes of deceptive business practice alleged in the information in this case as elements for legal sufficiency purposes. Majority Opinion at 9. And they clearly *are* elemental, if only because they are *exclusive*. So, why does the Court not treat them as such for unanimity purposes?

### D. Culpable Mental State

This understanding of the full gravamen of Section 32.42(b) is

reinforced by how it assigns its culpable mental state. The Court has said that circumstances surrounding conduct most clearly defines the gravamen of an offense when the culpable mental state is directly attached to it. *Ramos v. State*, 636 S.W.3d 646, 657 (Tex. Crim. App. 2021) (quoting *Huffman*, 267 S.W.3d at 908). Here, the culpable mental state does *not* directly modify the circumstance-surrounding-conduct element. Instead, the statute explicitly assigns its culpable mental state—"intentionally, knowingly, recklessly, or with criminal negligence"—directly to the *actus reus* of the offense ("deceptive business practices"), rather than the circumstances element that requires that those acts occur "in the course of business."[16]

It also seems an intolerable stretch to say that the explicit culpable mental state requirement that is incorporated into the statute should apply to the *general* descriptor in the preamble, but not *also* to "the following" statutorily proscribed actions that give substance to that term.[17] The information in this case, accordingly, required the jury to find that Appellant "intentionally, knowingly and recklessly" committed the *specific* three modes of deceptive business practices contained in Subsections 32.42(b)(7), (9), and (12)(B). It did not limit the application

---

[16] This is not to say that we might not also assign a culpable mental state to the "in the course of business" element too, but only to point out that the statute itself seems to directly focus its culpability component on the specifically listed forbidden acts at least as much as on the circumstances that must also be in place for an offense to occur.

[17] Moreover, again, the statute at issue in *O'Brien* is distinguishable. In the Organized Criminal Activity statute, the specific intent directly modifies the circumstance surrounding conduct. The predicate offenses must be committed with the specific "intent to establish, maintain, or participate in a combination or in the profits of a combination[.]" TEX. PENAL CODE § 71.02(a).

of the *mens rea* required simply to whether the specific act committed was an undifferentiated "deceptive business practice."

### E. Double-Jeopardy Implications

Another relevant consideration is the effect that the Court's conclusion will have on principles of double jeopardy whenever those issues may happen to arise with respect to Section 32.42(b). Jury unanimity and double jeopardy "are closely intertwined strands of our jurisprudence[,]" the Court has said, that "address the same basic question: In a given situation, do different legal theories of criminal liability comprise different offenses, or do they comprise alternate methods of committing the same offense?" *Nawaz v. State*, ___ S.W.3d ___, No. PD-0408-21, 2022 WL 2233864, at *5 (Tex. Crim. App. June 22, 2022) (quoting *Huffman,* 267 S.W.3d at 905). Because the Court today concludes (at least for jury-unanimity purposes) that the twelve subsections of Section 32.42(b) are not elemental, a violation of any one of them will constitute a violation of any *other*, and an unscrupulous businessman may only be prosecuted once for any deceptive business practice he may happen to commit "in the course of business." Indeed, given the potential breadth of that phrase—"in the course of business"—I am not sure whether he will *ever* be subject to more than one prosecution or conviction under the statute! As in *O'Brien*, "I have my doubts that the Legislature contemplated such a limitation." 544 S.W.3d at 397 (Yeary, J., dissenting).

### F. Different Grades of Offense

Also as in *O'Brien*, the Court today does not concern itself with the fact that Section 32.42, as a whole, sets out potentially different

grades of offense depending on which of the twelve subsections of Section 32.42(b) applies. *See* Majority Opinion at 17, n.40 (noting the different potential grades of offense but failing to address that state of the law because, apparently, not raised by the facts of this case, since "the three subsections in Appellant's charging instrument—b(7), b(9), and b(12)(B)—are all Class A misdemeanors").[18] On this point, I will simply fall back on what I said in my *O'Brien* dissent:

> I do not see how we can, with any consistency, declare that predicate offenses are mere manner and means when choosing among them does not determine the grade of offense, *but that they are elemental when it does*. It seems to me that they are either elemental or they are not—period. I see no basis in the language of the statute to draw a distinction. Moreover, I do not see how we can declare that they are anything *but* elemental when—at least sometimes—they determine the level of offense. *See Calton v. State*, 176 S.W.3d 231, 234 (Tex. Crim. App. 2005) (a statute that indicates that an offense "is a felony of the third degree if" certain facts are proven has plainly identified those facts as "elements"). And if the predicate offenses *are* elemental, then jury unanimity is required. *See Jourdan v. State*, 428 S.W.3d [at] 94 ("Under state law, the jury must be unanimous in finding every constituent element of the charged offense in all criminal cases.") (citing *Pizzo*, 235 S.W.3d [at] 714).

*O'Brien*, 544 S.W.3d at 398 (Yeary, J. dissenting). In short, the fact that the particular case before us does not involve different grades of offense

---

[18] All offenses under Sections 32.42(b)(7) through 32.42(b)(12) are Class A misdemeanors. TEX. PENAL CODE § 32.42(d). But offenses committed under the terms of Sections 32.42(b)(1) through 32.42(b)(6) may *sometimes* be Class C misdemeanors, when committed only with criminal negligence and the offender has no previous convictions for deceptive business practices, but they are *otherwise* Class A misdemeanors. TEX. PENAL CODE § 32.42(c).

does not make the fact that the different subsections of Section 32.42(b) carry potentially different grades of offense irrelevant to the question of whether they define elements versus mere manner and means.[19]

### G.  This Case is Not Like *Schad* and *Kitchens*

Section 32.42(b) is not like the statutes at issue in *Schad v. Arizona*, 501 U.S. 624 (1991) (plurality opinion), and *Kitchens v. State*, 823 S.W.2d 256 (Tex. Crim. App. 1991). In those cases, both the United States Supreme Court and this Court found no error in failing to require jury unanimity with regard to statutory elements that did not constitute the essential criminal act sought to be prohibited by a statute. *Schad* involved a charge of capital murder where the jury was not required to be unanimous about whether a murder was: (1) a felony murder, or (2) premeditated. *Schad*, 501 U.S. at 627. *Kitchens*, similarly, involved a charge of capital murder where the jury was not required to be unanimous about whether the murder was committed in the course of committing a robbery or an aggravated sexual assault. *Kitchens*, 823 S.W.2d at 257. In both of those cases no one questioned the fact that the jury was required to be unanimous about whether the defendant committed the essential murder that made his conduct criminal. But in this case, the Court approves jury non-unanimity on the core criminal act of the defendant as defined under the relevant statute.

Under Section 32.42(b), no deceptive business practice—even

---

[19] The Organized Criminal Activity statute has a provision that makes the punishment contingent on the most serious predicate offense that was committed. TEX. PENAL CODE § 71.02(b). The *O'Brien* Court regarded this as another factor that favored its conclusion that the predicate offenses were not elemental. 544 S.W.3d at 388. There is no comparable provision to be found in Section 32.42.

when committed intentionally and in the course of business—is criminal unless it involves one of the specific acts listed in Subsections (b)(1) through (b)(12) of the statute. The prohibited acts listed there are varied, distinctive, and exclusive. Separately, they consist of the only *actus reus* options provided for in the statute. They are not mere manner and means for committing some other *actus reus* found elsewhere in the statute. And as the Court's legal sufficiency analysis in this case confirms, a conviction under the statute cannot stand unless proof beyond a reasonable doubt demonstrates the defendant's commission of at least one of those specifically enumerated and distinctive acts.

Even the plurality in *Schad* allowed that "nothing in our history suggests that the Due Process Clause would permit a State to convict anyone under a charge of 'Crime' so generic that any combination of jury findings of embezzlement, reckless driving, murder, burglary, tax evasion, or littering, for example, would suffice for conviction." *Schad*, 501 U.S. at 633. Justice Scalia agreed. *Id.* at 650 (Scalia, J., concurring). It seems to me that the statute at issue here is much more like the one a majority of the United States Supreme Court justices warned about in *Schad* than like the statutes actually at issue in either that case or *Kitchens*. This distinction ought to give the Court pause. And it is even more important to examine unanimity questions like the one presented in this case with attention to the federal precedents on the topic now that the United States Supreme Court has confirmed that "the Sixth Amendment's unanimity requirement applies to state and federal criminal trials equally." *Ramos v. Louisiana*, 140 S. Ct. 1390, 1397 (2020). But the Court has not done so here.

## H. On Balance

For all of these reasons, I ultimately conclude that Sections 32.42(b)(1) through 32.42(b)(12) are elemental, not only for legal sufficiency purposes, but for jury-unanimity purposes as well. The Court declares that the phrase "one or more of the following" "would be rendered meaningless if Section 32.42(b) were to require jury unanimity in the specific manners and means." Majority Opinion at 16−17. I do not agree. That "[a] person commits *an* offense if" he "commits one *or more*" of the listed deceptive business practices could simply be the Legislature's way of signaling that a person who commits *at least one* of the enumerated acts on a specific occasion has committed "an offense." TEX. PENAL CODE § 32.42(b) (emphases added). It does not necessarily mean that *if* he has committed *more than one* of the enumerated offenses on that occasion, he cannot separately be prosecuted for as many of the different statutorily defined acts of deceptive business practice as he has committed on that occasion. And it also does not necessarily mean that jury unanimity is not required with respect to the commission of "an offense" under any one of the enumerated theories.

And in any event, even if I agreed with the Court that my reading of the statute *did* somehow render the phrase "one or more" wholly inoperative, I would *still* conclude that Sections 32.42(b)(1) through 32.42(b)(12) are elemental, for the reasons I have explained above. The "surplusage canon," "like all other canons, . . . must be applied with judgment and discretion, and with careful regard to context. It cannot always be dispositive because (as with most canons) the underlying

proposition is not invariably true." Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS (2012), at 176. It may be trumped by other relevant considerations, as here, I think, it is.

### III. CONCLUSION

I would reverse the court of appeals' judgment and remand the cause for a determination of the legal sufficiency of the evidence to show the other two modes of deceptive business practice, and, if necessary, to determine whether the error in failing to require jury unanimity was harmless. Because the Court does not, I respectfully dissent.

**FILED:**                                              January 11, 2023
**PUBLISH**